## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMERICAN MODERN HOME INSURANCE COMPANY, a/s/o Francis DeBoise and Marguerite Mullaney, and FRANCIS DEBOISE and MARGUERITE MULLANEY Individually, | ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | **CIVIL ACTION** **NO. 4:16-40127-TSH** |
| UNITED YACHT SALES and EDWARD CASWELL | ) ) ) | |
| Defendant/Cross-Defendant Defendant/Cross-Plaintiff | ) ) ) | |

## REPORT AND RECOMMENDATION

### July 13, 2017

Hennessy, M.J.

By Orders of Reference dated January 19 and 24, 2017 (Docket #22, #24), and pursuant to

28 U.S.C. § 636(b)(1)(A), these matters were referred to me for a ruling on Defendant United

Yacht Sales' ("United Yacht") (1) Motion to Dismiss Plaintiffs'[1] Complaint for Lack of

Subject-Matter Jurisdiction, Failure to State a Claim, and Improper Venue (Docket #9); (2) Motion

for Sanctions against Plaintiffs (Docket #15); and (3) Motion to Dismiss Defendant Edward

Caswell's Cross-Claim for Lack of Subject-Matter Jurisdiction and Failure to State a Claim

(Docket #19); and also for a ruling on (4) Plaintiffs' Counter-Motion for Sanctions against

---

[1] Plaintiffs in this matter are Francis DeBoise and Marguerite Mullaney individually, and American Modern Home Insurance Company as subrogee of both DeBoise and Mullaney.  (Docket #1).

Defendant United Yacht (Docket #21).  Various oppositions were filed.  (See, e.g., Docket #13, #21, #23, #25).  On June 27, 2017, a motion hearing was held on the aforementioned matters.  (Docket #31).  These matters are now ripe for adjudication.  In consideration of the foregoing submissions and for the reasons that follow, I recommend that Defendant United Yacht's (1) Motion to Dismiss Plaintiffs' Complaint be DENIED (Docket #9); (2) Motion for Sanctions against Plaintiffs be DENIED (Docket #15); and (3) Motion to Dismiss Defendant Caswell's Cross-Motion be GRANTED[2] (Docket #19).  I further recommend that (4) the Court DENY Plaintiffs' Counter-Motion for Sanctions against Defendant United Yacht (Docket #21).

I.      PROCEDURAL BACKGROUND

        Plaintiffs initiated this action by filing a complaint on September 7, 2016.  (Docket #1).  Defendant United Yacht filed a Motion to Dismiss for Lack of Jurisdiction, Failure to State a Claim, and Improper Venue on November 28, 2016.  (Docket #9).  On December 16, 2016, Defendant Caswell filed an answer and asserted a cross-claim against Defendant United Yacht.  (Docket #14).  On January 4, 2017, Defendant United Yacht filed a Motion for Sanctions against Plaintiffs, and on the next day filed a Motion to Dismiss Defendant Caswell's Cross-claim for Failure to State a Claim and Lack of Subject-Matter Jurisdiction.  (Docket #15, #19).  On January 18, 2017, Plaintiffs filed their opposition to the Motion for Sanctions together with a counter-motion for sanctions against United Yacht.  (Docket #21).  A motion hearing was held on June 27, 2017.  (Docket #31).

---

[2]  Defendant Caswell is granted leave to refile his cross-claim on or before July 31, 2017.

II.    FACTUAL BACKGROUND[3]

Plaintiffs Francis DeBoise and Marguerite Mullaney owned a 2001 Hunter 460 sailing yacht named the "Marguerite."  (Docket #1 ¶ 1)  Plaintiff American Modern Home Insurance Company provided an insurance policy to Plaintiffs DeBoise and Mullaney for the yacht.  (Id. at ¶ 7).

On August 13, 2013,[4] Plaintiffs DeBoise and Mullaney executed a contract with Defendant United Yacht and Defendant Caswell, a licensed maritime captain, to transport their yacht from Woods Hole, Massachusetts to Newport, Rhode Island.  (Id. at ¶¶ 9, 21).  Defendant Caswell captained the ship during transport.  (Docket #1 ¶ 32).

On September 10, 2013, during the transport from Woods Hole to Newport, Defendant Caswell grounded the yacht.  (Id. at ¶¶ 10, 15, 26).  Due to the impact from the grounding, the yacht sustained severe damage to the lead keel, keel stub, stringer grid, cabin bulkheads, and chain plate ports.  (Id. at ¶ 10).  Despite the severe damage to the yacht, Defendant Caswell continued onward to his destination of Newport. (Id. at ¶ 10).  While sailing away from the grounding site, but prior to arriving in Newport, the auxiliary engine became overheated, and the yacht had to be towed the remainder of the way.  (Id.).

After the damage to the yacht was sustained, Plaintiffs Deboise and Mullaney filed an insurance claim with their insurer, American Modern.  (Id. at ¶ 11).  Upon inspection, the yacht was declared a total loss due to the damage incurred by the grounding of the yacht by

---

[3]  The facts are taken from the factual allegations in the Complaint, (Docket #1), coupled with any documents integral thereto, such as the August 13 "Contract for Maritime Captain Services," and are generally accepted as true for purposes of this recommendation.  Trans-Spec Truck v. Caterpillar, 524 F.3d 315, 321 (1st Cir. 2008).

[4]  Plaintiffs' Complaint also states that they entered into an "agreement" with Defendant United Yacht on August 8, 2013. (Docket #1 ¶ 21).  It is unclear whether the difference in dates signifies a separate agreement which precipitated the August 13 maritime contract, or whether this date was simply entered in error.  (Compare Docket #1 ¶ 9 with id. at ¶¶ 21, 32).

Defendant Caswell.  (Id. at ¶ 11).  As a result, Plaintiff American Modern paid $197,871.41 to Plaintiffs DeBoise and Mullaney.  (Id. at ¶ 11).

III.    STANDARD

Defendant United Yacht has moved to dismiss the instant action pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When a court considers a 12(b)(1) motion, "it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor."  Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)).  The court may also consider "whatever evidence has been submitted, such as the depositions and exhibits submitted."  Merlonghi, 620 F.3d at 54 (quoting Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).  Because the court reviews all the well-pleaded facts and draws all reasonable inferences in the plaintiff's favor, "[t]he analytical lens through which a court reviews a Rule 12(b)(1) motion is . . . nearly identical to that employed on a Rule 12(b)(6) motion."  Municipality of San Sebastian v. Puerto Rico, 89 F. Supp. 3d 266, 273 n.1 (D.P.R. 2015).  The plaintiff has the burden of proving subject-matter jurisdiction.  Municipality of San Sebastian, 89 F. Supp. 3d at 273.

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to seek dismissal of an action based on improper venue.  Fed. R. Civ. P. 12(b)(3).  As with both Federal Rules of Civil Procedure 12(b)(1) and (b)(6), when ruling on a motion to dismiss for improper venue a court must treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the

4

plaintiff. <u>IvyMedia Corp. v. Take Tour, Inc.</u>, No. 12-11535-NMG, 2013 U.S. Dist. LEXIS 132712, at \*25 (D. Mass. July 9, 2013). The plaintiff has the burden of proving venue is proper. <u>Id.</u>

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." <u>Ruiz v. Bally Total Fitness Holding Corp.</u>, 496 F.3d 1, 5 (1st Cir. 2007) (citing <u>Rogan v. Menino</u>, 175 F.3d 75, 77 (1st Cir. 1999)). Materials attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss. <u>Trans-Spec Truck Serv. v. Caterpillar</u>, 524 F.3d 315, 321 (1st Cir. 2008). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." <u>Ruiz Rivera v. Pfizer Pharms., LLC</u>, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and alterations omitted).

IV.    ANALYSIS

**Defendant United Yacht's Motion to Dismiss Plaintiffs' Complaint**

I will first address Defendant United Yacht's Motion to Dismiss Plaintiffs' Complaint. (Docket #9). The first of three bases for Defendant United Yacht's Motion to Dismiss asserts that this Court lacks subject-matter jurisdiction over the controversy. (Docket #9); <u>see</u> Fed R. Civ. P. 12(b)(1). I recommend that the Court deny Defendant United Yacht's Motion to Dismiss for

Lack of Subject Matter Jurisdiction because I conclude that the Court has diversity jurisdiction over this matter.

A.      Subject-Matter Jurisdiction

In their complaint, Plaintiffs contend that this Court has both diversity and admiralty jurisdiction over the claims.  (Docket #1 ¶¶ 2, 8).

1.   Diversity jurisdiction

Defendant United Yacht argues that Plaintiffs' complaint has not sufficiently pled diversity jurisdiction because Plaintiffs have not "specifically alleg[d] an amount in controversy, but merely a legal conclusion that [the unspecified amount in controversy] is sufficient to satisfy 28 U.S.C. § 1332."  (Docket #9 ¶ 6).  At the motion hearing, however, Defendant United Yacht's counsel withdrew this argument because Plaintiffs state in their complaint that "American Modern paid $197,871.41 to Deboise and Mullaney and is now subrogated to the extent of its payment." (Docket #1 ¶ 11).  Thus, based on this concession and the other elements of Plaintiffs' complaint, the Court has diversity jurisdiction over the parties.

2.   Admiralty jurisdiction

There also exists a question as to whether this Court has admiralty jurisdiction.  Based on diversity, this Court has subject-matter jurisdiction irrespective of admiralty jurisdiction, but this determination nonetheless affects how Plaintiffs proceed with their demand for a trial by jury. (Docket #1 at 6).

Admiralty jurisdiction is governed by 28 U.S.C. § 1333, which states that "the district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  28 U.S.C. § 1333(1); see Fed. R. Civ. P. 9(h) ("If a claim for relief is

6

within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim . . . .").

Defendant United Yacht asserts that this Court lacks admiralty jurisdiction because it contends the dispute does not involve a maritime contract; rather, in its view, Defendant United Yacht was a party only to a brokerage contract with DeBoise and Mullaney to sell their boat, and "a brokerage contract is not a maritime contract." (Docket #9 ¶¶ 2-5). Plaintiffs contend that that the brokerage contract is not the operative contract here, and instead rely on the August 13 "Contract for Maritime Captain Services." To that end, Plaintiffs allege that "[o]n or about August 13, 2013, Deboise and Mullaney contracted with Defendants to provide maritime captain services, and more specifically to transport their vessel, from Woods Hole, Massachusetts to the Newport, Rhode Island shipyard slip." (Docket #1 ¶ 9). Plaintiffs further allege that "United Yacht Sales and Deboise and Mullaney entered into an agreement whereby United Yacht Sales agreed to provide transport services." (Docket #1 ¶ 21).

I recommend that the Court decline to address admiralty jurisdiction at this juncture. There is little doubt that, taken as true, the allegations in Plaintiffs' complaint would establish admiralty jurisdiction. See Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 610 (1991) ("[I]n determining whether a contract falls within admiralty, the true criterion is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions." (quotation marks omitted). Indeed, common sense suggests that a contract to man and transport a ship is maritime in nature. See, e.g., Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961) ("Without doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction."); BDL Int'l v. Sodetal USA, Inc., 377 F.

Supp. 2d 518, 522 (D.S.C. 2005) ("A maritime contract relates to ships, to commerce or navigation on water, to transportation by sea, or to maritime employment."); J.A.R., Inc. v. M/V Lady Lucille, 963 F.2d 96, 98 (5th Cir. 1992) ("A maritime contract is '[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment.'") (quoting Thurmond v. Delta Well Surveyors, 836 F.2d 952, 954 (5th Cir. 1988) (alteration in original)).

However, that is not the standard here.  As the First Circuit explained in Valentin v. Hospital Bella Vista, 254 F.3d 358, 363-64 (1st Cir. 2001), where, as here, a defendant makes a factual challenge to a plaintiff's jurisdictional averments—as opposed to a sufficiency challenge— those averments are entitled to "no presumptive weight," id. at 363.  Put another way, pursuant to a factual challenge under Rule 12(b)(1), a plaintiff's factual allegations are no longer presumed to be true.  Although the Court "enjoys broad authority" to determine its own jurisdiction, I recommend deferring the exercise of that authority in a case with this procedural posture for two reasons.  First, I find that this case falls within the exception outlined by the First Circuit in Valentin such that a court may defer jurisdictional resolution where, as here, "the jurisdictional facts, though genuinely disputed, are inextricably intertwined with the merits of the case." Valentin, 254 F.3d at 363 n.3.  To be sure, to resolve this jurisdictional dispute I would be required to determine which of the two purported contracts is the operative contract here—that is, the alleged brokerage contract on March 4 or the alleged maritime contract on August 13.  Such a determination would require resolving the crux of the dispute—which contract controls, if any, and who is a party to each contract, if any exist.  Those determinations are inextricably intertwined with the merits of the case because Defendant United Yacht denies that it is a party to the alleged August 13 maritime contract and Plaintiffs deny that the March 4 brokerage contract is operative.

Second, I recommend deferring a ruling because, in any case, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity), and therefore the question of whether admiralty jurisdiction exists does not affect the Court's power to hear the case.  See supra.

        B.     Venue

Defendant United Yacht also alleges that venue is improper for essentially the same reasons as its challenge to admiralty jurisdiction—that is, it contends the operative contract is the March 4 brokerage contract and that contract has a forum selection clause for Martin County, Florida. (Docket #9 ¶¶ 8-14); see Fed. R. Civ. P. 12(b)(3); see also 28 U.S.C. § 1391.  Defendant United Yacht does not dispute venue on any other basis.  (See Docket #9).

When ruling on a motion to dismiss for improper venue a court must treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  IvyMedia Corp. v. Take Tour, Inc., No. 12-11535-NMG, 2013 U.S. Dist. LEXIS 132712, at *25 (D. Mass. July 9, 2013).

I recommend that the Court deny Defendant United Yacht's Motion to Dismiss on the basis of improper venue because, taking the allegations in the complaint as true, Plaintiffs have pled sufficient facts to show that venue is proper in Massachusetts.  In its motion, Defendant United Yacht references the forum selection clause in the March 4 brokerage contract, which provides as follows:

> Any proceeding relating to this Agreement will be brought in the courts of the State of Florida in the county of the main office of the Broker, or if the Broker has no office in the State of Florida, in the court of applicable jurisdiction within or including Martin County, Florida, and each of the parties irrevocably submits to the exclusive jurisdiction of each such court, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding shall be heard and determined only in any such court, and agrees not to bring any proceeding relating to this Agreement in any other court . . . .

(Docket #9 ¶ 10).  At the outset, Defendant United Yacht's reliance on this provision is inapposite because Plaintiffs do not even make mention of the March 4 brokerage contract in their complaint, let alone its forum selection clause.  Defendant United Yacht does not direct this Court to any authority which permits the consideration of evidence outside the pleadings when considering a motion to dismiss based on improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

In any case, even considering evidence outside of the pleadings in my assessment of whether venue is proper, the plain language of the forum selection clause in the March 4 brokerage contract makes clear that the provision has limited applicability, such that it applies only to "[a]ny proceeding relating to this Agreement . . . ."  Building on this, in their opposition to the motion to dismiss, Plaintiffs assert that the claim "is not being made under services performed under the [March 4] Standard Central Listing Agreement, but rather the [August 13] Contract for Maritime [Captain] Services."  (Docket #13 at 6-7).  Indeed, Plaintiffs' complaint makes this clear through the allegation that "[o]n or about August 13, 2013, Deboise and Mullaney contracted with Defendants to provide maritime captain services, and more specifically to transport their vessel, from Woods Hole, Massachusetts to the Newport, Rhode Island shipyard slip."  (Docket #1 ¶ 9). That allegation, taken as true, establishes that this action is on the basis of the August 13 contract, and that Defendant United Yacht is a party to that contract.  Other indicia also support that finding because (1) the contract is printed on United Yacht's stationary, see Michael v. Liberty, 547 F. Supp. 2d 43, 49 (D. Me. 2008) (concluding that "[t]he use of company letterhead by an agent is evidence of an agency relationship (actual or apparent authority) that can bind the principal to a contract with a third party"), and (2) the email by Samantha Gauld, a United Yacht employee, reflects that she helped orchestrate the contract, (see Docket #23-1).  Thus, I recommend that the Court conclude that venue is proper.

C.        Failure to State a Claim

The third basis for Defendant United Yacht's motion to dismiss is for failure to state a claim.  (Docket #9 ¶¶ 15-20).  Defendant United Yacht argues that with regard to the August 13 contract among Plaintiffs and Defendants, the complaint "does not allege when this contract was entered into, whether it was oral or written, or what its essential terms would be." (Docket #9 ¶ 15).  Contrary to Defendant's contention, the essential terms of that contract were integrated into Plaintiffs' complaint which alleges the following:

> On or about August 13, 2013, Deboise and Mullaney contracted with Defendants to provide maritime captain services, and more specifically to transport their vessel, from Woods Hole, Massachusetts to the Newport, Rhode Island shipyard slip.

> On or about August 8, 2013, United Yacht Sales and Deboise and Mullaney entered into an agreement whereby United Yacht Sales agreed to provide transport services.

(Docket #1 ¶¶ 9, 21).  These allegations detail when the contract was formed and that the essential terms of the agreement were to provide transport services of the yacht.  Defendant United Yacht also argues that the complaint does not explain how it could be part of the contract because "it is not alleged that [Caswell] was an agent or employee of United Yacht."  (Docket #9 ¶ 16).  An agency or employment allegation, however, is made by inference given that Plaintiffs aver that "United Yacht Sales has a duty of care to employ a captain who is fully knowledgeable and skilled in navigating the waters and to safely transporting the vessel." (Docket #1 ¶ 13) (emphasis added). Defendant United Yacht's additional arguments principally alleging that the complaint does not detail how the implied warranty, duty, or contract was breached similarly fail because Plaintiffs assert that Caswell, who by inference is an agent or employee of United Yacht, grounded their vessel resulting in $197,871.41 in damages.  (Docket #1 ¶ 11).  Despite its protestations, Defendant United Yacht can readily surmise how a duty was breached where it is alleged that Defendant's agent or employee grounded a yacht in the performance of his duty.

11

I therefore recommend that the Court DENY Defendant United Yacht's Motion to Dismiss (Docket #9).

### Motion for Sanctions and Counter-Motion for Sanctions

Next, I address Defendant United Yacht's Motion for Sanctions against Plaintiffs (Docket #15) and Plaintiffs' Counter-Motion for Sanctions against Defendant United Yacht (Docket #21). For the reasons that follow, I recommend that the Court DENY Defendant Yacht's Motion (Docket #15) and also DENY Plaintiffs' Counter-Motion (Docket #21).

Federal Rule of Civil Procedure 11(b) provides that by signing and filing a pleading or motion with the Court, "an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief," and after a reasonable inquiry, that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed R. Civ. P. 11(b). Sanctions may result for a violation of any of the above provisions. Fed. R. Civ. P. 11(c). Awarding sanctions for a violation of Rule 11 is within the discretion of the court. See Fed. R. Civ. P. 11(c)(2) ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."). Similarly, the court also has discretion whether to award attorney's fees and expenses to the prevailing party. Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.").

When assessing whether Rule 11 sanctions are warranted, "judges should not employ the wisdom of hindsight, but should consider the reasonableness of the attorney's conduct at the time the attorney acted." <u>Cruz v. Savage</u>, 896 F.2d 626, 633 (1st Cir. 1990). As the First Circuit has described, "at least 'culpable careless[ness]' is required before a violation of the Rule can be found." <u>Citibank Global Mkts., Inc., v. Santana</u>, 573 F.3d 17, 32 (1st Cir. 2009) (alteration in original) (quoting <u>Roger Edwards LLC v. Fiddles & Son, Ltd.</u>, 437 F.3d 140, 142 (1st Cir. 2006)). The imposition of Rule 11 sanctions is a remedy that should not be employed lightly. <u>Navarro-Ayala v. Nunez</u>, 968 F.2d 1421, 1426-27 (1st Cir. 1992) ("The power to impose sanctions is a potent weapon and should, therefore, be deployed in a balanced manner . . . . [P]roportionality is often a proxy for appropriateness."); <u>Augustyniak Ins. Group, Inc. v. Astonish Results, L.P.</u>, C.A. No. 11-464S; C.A. No. 11-564S, 2013 U.S. Dist. LEXIS 36451, at *26 (D.R.I. 2013) ("Rule 11 sanctions are reserved for clear cases of abuse.").

Here, Defendant United Yacht argues that the extraordinary remedy of Rule 11 sanctions is appropriate because, in its view, the factual contentions in Plaintiff's complaint have "no evidentiary support." (Docket #15 at 1). After recounting numerous facts alleged in Plaintiffs' complaint, Defendant United Yacht summarily contends: "All of these allegations are simply false." (Docket #15 at 2). To support that argument, Defendant United Yacht references affidavits submitted in support of its motion which dispute the veracity of Plaintiffs' allegations. (Docket #15 at 2). Additionally, Defendant United Yacht reaffirms its argument that the March 4 brokerage contract is the operative contract, and pursuant to that contract it has no liability for the grounding of DeBoise and Mullaney's yacht. (Docket #15 at 2-3). I further note that Defendant fails to cite any legal authority in its Motion for Sanctions or in its memorandum in support thereof. (Docket #15 and #16).

13

I recommend that the Court deny Defendant United Yacht's Motion for Sanctions (Docket #15).[5]  Both the tone and content of Defendant United Yacht's motion make clear that its argument is, in essence, that Plaintiffs' complaint lacks evidentiary basis because the averments are false.  Defendant United Yacht, however, misconstrues the standard warranting Rule 11 sanctions.  As the Advisory Committee noted in its 1993 amendments, motions for sanctions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.  Nor should Rule 11 motions be prepared to emphasize the merits of a party's position . . . ."  Although Defendant United Yacht zealously advocates to the contrary of Plaintiffs' allegations, such advocacy targets the ultimate merit of Plaintiffs' claims, not the reasonableness of the allegations at the time they were made.  Indeed, as Plaintiffs note, at the time of filing they had "no way of ascertaining what United's personnel would attest to before the Complaint was filed and discovery conducted." (Docket #21 at 8).  Allegations that Defendant United Yacht was a party to a contract, where that contract was orchestrated by Defendant's employee and on Defendant's letterhead, can hardly be said to be so baseless as to warrant Rule 11 sanctions against Plaintiffs.

Turning to Plaintiffs' Counter-Motion for Sanctions (Docket #21), I recommend that the Court deny that motion as well.  As noted, the Court has discretion whether to award attorney's fees and costs to the prevailing party on a Rule 11 motion.  Fed. R. Civ. P. 11(c)(2).  Although I have recommended that the Court deny Defendant United Yacht's Motion for Sanctions, I nonetheless find that Defendant's motion was not of the nature that warrants attorney's fees in favor of the prevailing party.  In an effort to avoid a "full-scale satellite litigation in the area of

---

[5] Plaintiffs oppose Defendant United Yacht's Motion for Sanctions on several grounds, one of which is that Defendant did not satisfy the procedural safeguards prior to filing its motion.  Because the merits of that argument are not immediately clear, and because I ultimately recommend the denial of Defendant's motion, I need not address Plaintiffs' procedural contentions.

sanctions . . . [and] punctiliously analyzing the reasonableness of each and every legal and factual contention," CQ Int'l Co. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 62 (1st Cir. 2011), I briefly note that there is evidence in the record which could suggest that Plaintiffs engaged Defendant Caswell as an independent contractor, and therefore Defendant United Yacht would not have been a party to the August 13 "Contract for Maritime Captain Services." That evidence could include: the plain language of the contract, the nature of the service, the beneficiaries of the contract, the signatories to the contract, and the allegation that DeBoise said that he was surprised to learn that United Yacht was a named party in the instant suit, (see Docket #25-3). In that light, Defendant United Yacht's Motion for Sanctions, while not meritorious, was not of the nature that justifies awarding fees and costs to the prevailing party. I therefore recommend that Plaintiffs' Counter-Motion for Sanctions be denied (Docket #21).

**Defendant United Yacht's Motion to Dismiss Defendant Caswell's Cross-Claim**

Defendant United Yacht also moves to dismiss Defendant Caswell's cross-claim for failure to state a claim.[6] (Docket #19). I recommend that the Court grant Defendant United Yacht's Motion, (Docket #19), and grant Defendant Caswell leave to refile on or before July 31, 2017.

Defendant United Yacht highlights numerous deficiencies in Defendant Caswell's cross-claim, which Defendant Caswell's counsel appeared to concede at oral argument. First, Defendant Caswell does not allege any facts forming the basis for a cross-claim, nor does he incorporate any of the allegations in Plaintiffs' complaint. (Docket #19 at 1-2). Second, Defendant Caswell fails to detail the elements of negligence or any other tort for which Defendants would be jointly liable. (Docket #19 at 1). To that end, putting aside the lack of factual allegations,

---

[6] Defendant United Yacht also moves for dismissal for lack of subject-matter jurisdiction. (Docket #19). I recommend that the Court alternatively dismiss the cross-claim on this basis because Defendant Caswell has failed to plead sufficient facts for his own citizenship, and therefore complete diversity among the parties cannot be ascertained. (See Docket #19). Defendant Caswell does not plead any alternative form of subject-matter jurisdiction.

Defendant Caswell also does not make legal conclusions relative to duty and breach of duty. (Docket #19 at 2). Defendant Caswell's cross-claim suffers from significant infirmities and thus fails to state a claim.

## V.    CONCLUSION

For the foregoing reasons, I recommend that the Court (1) DENY Defendant United Yacht's Motion to Dismiss Plaintiffs' Complaint (Docket #9); (2) DENY Defendant United Yacht's Motion for Sanctions against Plaintiffs (Docket #15); (3) GRANT Defendant United Yacht's Motion to Dismiss Defendant Caswell's Cross-Claim with leave to refile on or before July 31, 2017 (Docket #19); and (4) DENY Plaintiffs' Counter-Motion for Sanctions against Defendant United Yacht (Docket #21).[7]

/s/ David H. Hennessy
David H. Hennessy
U.S. Magistrate Judge

---

[7] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140 (1985).